May it please the Court, my name is David Schultz, I'm counsel for Plaintiff and Appellant Perfect 10, Inc. I would like to reserve four minutes for rebuttal. This appeal raises the question of whether a defendant involved in rampant copyright infringement may escape liability. Defendant Giganews admittedly copies and sells access to vast numbers of copyrighted movies, television shows, songs, and other works stored on its servers, including more than 61,000 Perfect 10 images, without permission or authorization. Although this case involves the Usenet and computers, at its core, this case is no different than any other case involving massive copyright infringement for profit. No court has ever permitted a defendant to escape liability when the defendant's business relies on the provision of unlicensed copyrighted works as its primary revenue source, regardless of the source of the infringing materials. Cases that we have cited in our briefs, such as Ticini, Grokster, Aereo, Napster, and Fung, as well as district court cases involving the Usenet, such as Arista Records v. Usenet.com, Perfect 10 v. Gooba, and Playboy v. WebWorld. Why don't you just talk to us instead of reading to us? They're all consistent with that principle, Your Honor. Business models which rely on the provision of unlicensed works as their primary revenue source infringe copyright. That's essentially what happened here, Your Honor. Defendants provide services that allow subscribers who pay a monthly fee to download infringing content from Giga News' servers. No case has ever immunized that conduct. Now, the district court- Counsel, if I may interrupt you. Absolutely. We have read your fine briefs. Let me ask you about Fox Broadcasting. Absolutely, Your Honor. Didn't this circuit indicate volitional conduct is an element of a direct infringement claim? What do you do with that case? Well, Your Honor, I don't believe that's what Fox held. Fox did not use the term volition. It did not use the term active conduct. What Fox said is who causes the copying. That's the standard. It's a causation standard. I don't know what volitional conduct means. I do know what causation means. And what Fox specifically said was that if copying is instigated at the hands of the user, then that's why the defendants in Fox were held not to be directly liable. That's not this case. Well, on page- Let me interrupt for a moment. Sure. On page 1067 of Fox, it says, and I quote, infringement of the reproduction right requires copying by the defendant, which comprises a requirement that the defendant then cause the copying. We agree with that, Your Honor. And our position is the evidence that Perfect 10 submitted satisfied that standard. We submitted evidence that 9,604 Perfect 10 images were copied by Giga News on its own volition without any request by the user when Giga News engaged in the peering process. These images were copied from other Usenet servers. Now, the district court and Giga News try to argue that somehow there's no volition or active conduct there because this activity was automated. But neither this court nor any other court has ever held that there is an automated conduct exception for direct copyright infringement. Quite to the contrary, less than a month ago, approximately a month ago, the Second Specifically held that a defendant could be liable for direct infringement if that, even if the defendant engaged in automated conduct so long as it caused the copying. Well, let me ask you about that, counsel. So if I have an iPhone and I take pictures of Perfect 10's images and Apple sells a iCloud program and charges a lot of money so people have their photographs automatically backed up on iCloud. Under your vision of this case, would Apple then be liable? Well, Your Honor, the difference is that in various cases where you have entities such as Apple that are providing pictures to downloading users, you have to enter into- Why don't you tell the folks in the audience so they know what kind of pictures we're talking about. I mean, are you ashamed of that? I'm not ashamed of it at all, Your Honor. But I was attempting to answer Judge Owen's question, if you'd like me to. No, please do. So again, the question is that Apple automatically copies pictures off of people's iPhones and puts them in a cloud somewhere. That's a reproduction of a- and something that has already been a copyrighted image of Perfect 10 gets reproduced and put onto some server somewhere. Your response to that is, how is that different than this case? The answer to how it's different in this case, Your Honor, is the admission by GigaNews and LiveWire that they don't have any authorization or any permission to copy those images. In the situation where we're talking about, where Apple and YouTube, there are specific agreements and licenses. The uploader has to say that it has a right to those images. It's a completely- But with the iCloud example, no it doesn't. If I have an iCloud account with Apple and I take pictures of copyrighted images, Apple automatically stores those photographs on a server, whether I say they're licensed or not. No, but as part of the agreement to be- we're going far afield from the record, but as a part of the agreement with Apple, in order to be able to access that iCloud, you have to say that you have a right to do those. That's how Apple protects itself. That's how YouTube protects itself. And that's why this case is a different entity than those cases. The reproduction right is violated if the copying is directly caused by the defendant, and in this case, even if it's automated, it's directly caused by a defendant. The mere fact that there may be other non-infringing images doesn't change things. And frankly, the other distinction, let me get into between Apple and here, is we're not talking about a situation where there are largely non-infringing uses. There was at least a disputed issue of material fact as to whether almost the entire Usenet today consists of messages with infringing content attached. If you were to look at, I believe it's pages 6 through 15 of our reply brief, and we mentioned these specific exhibits in our opening brief, it shows that 99.5% of the material on the Usenet are binary images, i.e. binary messages, i.e. messages involving movies, songs, etc. Not text messages. And in fact, Giga News provided not one example of any messages that were on its service that it had authority to provide. So we're not dealing with a passive internet service provider here, as was true in the case of one of the cases they rely upon, CoStar versus LoopNet. We're not dealing with an internet service provider such as a netcom, which had a side business of a bulletin board and only stored images for a short period of time. It's a very different animal, Your Honor, and you can't rely upon the mere fact that this activity is automated in order to be able to argue that there's no violation of a reproduction rate. And the damages you're seeking in this case, are they statutory? I believe so, Your Honor. Frankly, we never got to that point as to what the damages that we were going to be able to seek were because of Judge Baratt's ruling on the motions for summary judgment. I guess it would depend on whether it was willful or not willful. Among other things, Your Honor. Let me also turn to the fact that there were other violations of Plaintiff Perfect Ten's copyrights. There were violations of the display right. Under this court's opinion in Amazon, under the server test, the defendant that displays the image and therefore is involved in a violation of display right is the owner of the server. Here it's Giga News that owns the server. Now, Giga News tries to argue that in fact the violations are only through the user. But the analogy which basically shows that they're incorrect and which the district court ignored is the Ticini case. Excuse me, the Ticini case and the Aereo case. In Aereo, although it didn't involve display, Aereo involved the performance right. And the definition under the statute is the same. It's to show. And in Ticini, not only was the ultimate user held to be liable, but Aereo itself was held to violate that display right. Here as well, it's equally analogous. You can have more than one violator. And in this case, by showing images on its servers and allowing those to be displayed through its MIMO news reader, Giga News violates the display right. And let me turn, if I could as well, to the contributory infringement claim. Because, frankly, the district court got it completely wrong. In order for there to be a prima facie case of contributory infringement, you do not need to know, to show that a, that a DMCA notice complies with the requirements of section 512 of the statute. There was no motion here by the defendants for summary judgment on the ground that they were protected by the DMCA affirmative defense. It's clear under Napster, under Amazon, that all you need to show was that the defendant had actual knowledge of specific infringing material on its server. Well, that's why I wanted, I'm glad you brought up contributory, because I think that may be, for me, the closest issue in this case is this one right here. When I look at the takedown notices that were sent, and I'm going to be asking a lot of questions to the other side about this, there's some information there that is somewhat specific, and I know there's a whole list of images. But the fight seems to be, at least at some level, why weren't there message IDs? Can you explain what would have prevented your client from sending them the message IDs? Sure. Well, let me address that. First of all, the reason that our notices did not include message IDs, first of all, we did send notices that had message IDs. We sent notices that contained 2,821 message IDs, and nevertheless, the district court invalidated those notices. Why? Because the district court came up with this ruling that not only do you have to have message IDs, which is not required by the statute, but they have to be machine-readable message IDs. The statute merely requires that you comply with Section 512 in order to have a compliant notice under the DMCA. And for that matter, Your Honor, you don't even need to get to that issue, because all you need to show is we had knowledge of specific infringing materials, that the defendant had knowledge of specific infringing materials on its system. And the mere fact that they got notices, that those notices had pictures of perfect 10 images with copyrighted notices there, showed them that there was specific infringing material on the system. Counsel, they're going to say that's like showing a bunch of haystacks and a bunch of pictures of needles and saying, there are needles in those haystacks. I mean, they're going to want to have something a little more specific than that. So I'm trying to ask, why couldn't you have done, they say if you give us message IDs in a certain way, we can take care of this. And the reason we did not do that is because message IDs don't comply with the statute. But what prevented you from doing, I mean, this is a lot of litigation over something that seems to be could have been avoided. If they're saying if you give us little numbers, this is fixed, and you didn't because why? Well, A, we did provide ways for them to get message IDs. We provided search results that they could download the message IDs. The issue that they are focusing on is this whole issue of whether there was an automated message extraction feature. Had we known about the automatic message extraction feature back when we started sending notices, we may very well have done so. But they didn't tell us about that. They didn't ask for machine-readable message IDs. They just asked for message IDs. The problem with message IDs is that they don't show where the infringing material is located or where the infringed material is located. That's requirement of section 512. They do not show how the defendant is involved in the infringement. All the deficiencies of message IDs that we put in our brief, including the fact that they're error-prone, meant that we wanted to be able to show where the images were. We had been dealing with other cases as well. The Google case before Judge Match, which had various requirements about showing where infringing and infringed messages, infringed and infringing images were located. And therefore, we provided notices that we believed complied with the DMCA. But that's not the issue before this court. Remember, the issue before this court is not a DMCA affirmative safe harbor. The issue is knowledge of specific infringing material on the system. We certainly submitted evidence sufficient to create a triable issue of fact with respect to that. Both our notices, which have the pictures, the fact that Giga News processed notices that didn't have message IDs, they knew. We have a prima facie claim of copyright infringement. And therefore, at the very least, that requires a reversal. Now, for matters of judicial economy, it may be worthwhile for this court to address issues relating to the notices. But the issue there is not whether or not Giga News has these rules and requirements that the statute doesn't provide. It's what are the requirements of the statute? Did our notices comply? That's a different issue. Very well, we'll go and give him four minutes in rebuttal. We did ask a lot of questions. Good afternoon, your honors. May it please the court, I'm Thomas Hentoff. I represent AMICUS, the Recording Industry Association of America. In my limited time this afternoon, I would like to focus primarily on the issue of the financial benefit element of the vicarious infringement cause of action. A defendant infringes vicariously when two elements are satisfied. First, the defendant is in a position to have the right or ability to control or supervise infringing activity and fails to do so. So again, element number one, the defendant is in a position to do something about the infringing activity and fails to do so. Element number two is the element that we talked about in our brief and that I'm here to talk about today, which is if that defendant also receives a financial benefit from the infringing activity that the defendant could control, then that defendant is liable as a vicarious infringer. It is well established in this court, beginning with the FONA visa decision, which itself referred back to the old dance hall cases from several decades earlier. That one way that a plaintiff can prove a financial benefit for the defendant is when the infringing activity acts as a draw and brings people to the defendant's business. In this case, the district court accurately set forth everything that I've said so far, but then the district court added a new element. The district court said, in addition, the plaintiff has to show that the financial benefit had to come specifically from infringement of the plaintiff's own works or the plaintiff's own category of works. Now, no other case before the Giga News case in the district court ever held that. It's contrary to decades of this court's decisions, it's contrary to the purpose of vicarious liability as I laid it out, and it's contrary to the policy of vicarious infringement. In our brief, we quoted from the Polygram case in the District of Massachusetts. And that's a case that this court in Fonavisa relied upon, and said that this was a very detailed analysis of the history of the development of vicarious infringement. And in the Polygram case, the court said, there's a reason we have a vicarious infringement liability, and that's because if a party is closest to the infringement and gets a financial benefit from the infringement, then it's fair and just to make that person act to limit or stop the infringement when they're able to do that. The elements of the claim, the purpose behind the claim, does not fit with an additional requirement that the plaintiff actually prove that its own works were specifically the draw. Counsel, if I can just ask a question. It seems to me your vicarious infringement argument conflicts with Article III's standing. Perfect Ten's formulation of the direct financial benefit prong will allow a court to find a defendant vicariously liable for copyright infringement regardless of whether there is any causal link between the infringement of the plaintiff's own copyright works and any profit to the service provider. Doesn't this, at the very least, bump up against the causation requirement of Article III's standing? Your Honor, no. The causation requirement of Article III's standing is fully satisfied by the first element of the vicarious infringement cause of action. That's where, and that's really what's causing the infringement, that it is the party that has the ability to supervise or control the infringement. It's letting the infringement happen, and that's what's harming the copyright owners under Article III. Then the second element, which is what we're talking about, which is the financial benefit, that's where the duty comes from. So you have the harm from the right and ability to supervise or control element, which satisfies Article III. And then you have the duty. And in this case, the district judge added a new element to the duty that no court ever had. And in every case in the Ninth Circuit, within the Ninth Circuit, including the Ellison case, the court has always focused on infringing activity, not infringement of the plaintiff's own works. So in the Ellison case, there was a Usenet news group in which that infringed science fiction writers. And the court analyzed the infringing activity going on on that news group, not specifically, Mr. Ellison did not have to specifically show that his own works had been infringed. And I guess finally, as a matter of policy, the district court said, well, if what Perfect Ten is saying is true, and Giga News is, well, I'm going up. I thought I was going down. Well, you can finish your thought. I'll finish my, thank you, Your Honor. So the district court said, if this is true, and Giga News is awash in infringement, well, then you're speculating that some individual infringer, whether it's Perfect Ten or whether it's a photographer for National Geographic, the court said you're speculating that there was a draw from that infringement specifically. And one of the problems with that analysis, it means the biggest secondary infringers who are making the most money are the ones who least have to worry about policing their services, for instance, the small copyright owner. And again, that's contrary to the purpose and stated elements of the cause of action, which we talk about in our brief. Thank you very much, Counsel. Thank you, Your Honors. Good afternoon, Your Honor, and may it please the Court. My name is Andrew Bridges. I'm a Fenwick and West in San Francisco. This court in Perfect Ten versus C.C. Bill said that the burden of policing infringements online lies squarely with the copyright holder. In that case, this court called for a written notification of infringement, not the means for an online service provider to go do research or to research the information. Now, that was specifically in the DMCA context, not in the substantive claim context, but still the principle holds that a copyright holder in this context needs to make clear what the problem is so that the service provider can respond and to work with the copyright holder in good faith. But, Counsel, the problem I have with this is that many notices, although they're undecipherable, were raising the issue of copyright infringement, and you could have did remove some of them when they could read them. Sorry. But didn't that put them on notice? No, Your Honor. That alone didn't. But what Giga News did when getting a number of these notices, first of all, it took a number of messages down with manual laborious methods. But Giga News went back to Perfect Ten, for example, and said you faxed us 542 message IDs that we can't read. Will you please mail us the originals? Perfect Ten said no. Perfect, Giga News would say you're sending us screenshot notices. You're sending us search directions. That doesn't help us. Can you help us help you by just giving us message IDs? Giga News not only takes down vast numbers of messages, but it actually tries to work with copyright holders to get what most copyright holders perceive to be the objective of getting the material down. But notwithstanding this Court's decision in Perfect Ten versus C.C. Bill about the duty of a copyright holder to give proper notices, in case after case, Perfect Ten wants to litigate the quality of its notices. It picks fights with service providers on a regular basis over the question of proper notice. In this case, Giga News worked very hard to try to accommodate Perfect Ten, and it didn't work. Perfect Ten, Mr. Zeta, said that within 15 minutes, he could have generated a notice that would have addressed 90% of the infringements that he claimed to be on Giga News. He blamed the defendants for not teaching him how to do it earlier, even though the defendants had said there are commercial operations out there you can use to send us notices. He wouldn't use the commercial operations. He blamed the defendants for not telling him earlier how he could generate such a big notice so quickly. When he found out, what did he do? He never generated that notice. He never sent that notice to Giga News. To this day, he has not sent Giga News the notice he said he could prepare in 15 minutes. So what is this case about? Judge Owen's question earlier about damages is on point. It is about statutory damages, Your Honor. That's what this whole business model is about, and I calculate the statutory damages claim here at $7.5 billion for 50,000 images. That's the stakes at issue here. Three different judges looked at several different aspects of this case, and all three ended up seeing the case pretty much the same way. And the decisions of the court below are correct, and this court should sustain them. I'd like to discuss several of the substantive causes of action. First of all, direct infringement. The court is exactly right. Fox v. Dish, I think, disposes of the issue. Following the Fourth Circuit in the CoStar case, and the Second Circuit in the Cablevision case, and ultimately following Judge White in the Northern District of California in the Netcom case, whether you call it volition or causation doesn't matter. It's the same principle. I like causation better personally. What if it were called proximate causation? Isn't that really what we're talking about here? Exactly, Your Honor. And the thing the reason I don't like volition, frankly, is that we know that direct infringement is a strict liability tort, and it sounds like something intentional. So what I liked about Judge Barrett's opinion, frankly, is he really focused on causation and didn't get distracted by unintended associations with the word volition. But what's interesting is that this court in Fox was crystal clear about it. At pages 1070 to 1071, it said that operating a system to make copies at a user's command does not mean that the system operator, rather than the user, caused the copies. That's exactly applicable here. Exactly applicable. This is a system that operates automatically at user's commands. Now, two sets of users. There's GigaNews' own users who may upload things to Usenet through GigaNews, but then also given the nature of Usenet with automated peering among different Usenet providers, other service providers' users set off a chain of events that caused their messages to be propagated throughout Usenet. And so it was their acts or GigaNews' customers' acts. And on that last point, it's interesting because the UMG versus Shelter Capital Partners case was not a substantive claim case. It was a DMCA case on this relevant part. But that case, I'm sorry I don't have the page number, discussing the DMCA, it still referred by analogy to the CoStar case and to the concept of what it called volition. Because one of the claims in that case was that the defendant wasn't merely a hosting provider. It was doing all sorts of other things besides storage. It was transcoding, making things available in different formats for storage, for viewing and the like. And this court pointed out that those activities, even though they were set up structurally by the service provider, those activities were at a user's initiative, even though the user didn't personally carry them out. So that's a separate case in a DMCA context, not perfectly applicable here. But we've got two cases from this court, both Fox and the Shelter Capital Partners, that really reinforce the causation requirement. Now the Aereo case, I know the other side mentioned, what's interesting is that the dissent in Aereo brought up this concept, this causation, it called it volition requirement. The majority in Aereo did not reject it. They didn't say, no, there is no such doctrine. They didn't say the doctrine is wrong. Instead, the majority simply said, this case is special. This case is special because Aereo looks like a cable service provider. And we are going to apply to Aereo the very specific rules that apply to cable service providers. And at 25.07 in Supreme Court Reporter, the Supreme Court said Aereo is a system that is for all practical purposes a traditional cable system. And it applied the rules that apply to cable systems. It went on to limit that case to its facts and to distinguish other cases like this one. And this is at page 25.07. And I quote, in other cases involving different kinds of service or technology providers, a user's involvement in the operation of the provider's equipment and selection of the content transmitted may well bear on whether the provider performs within the meaning of the act. But the many similarities between Aereo and cable companies, considered in light of Congress's basic purpose in amending the Copyright Act, convince us that this difference is not critical here. We conclude that Aereo is not just an equipment provider and that Aereo performs. That's at 25.07. So, Your Honor, I think there's no doubt that this volition or causation requirement is here to say it's good law and this Court has recognized it. I'd like to move next to vicarious because Mr. Hentoff argues forcefully that this is some brand new concept of causation of a direct financial benefit that Judge Barrett created. Not at all. And I'll come to that. But first, I want to start with the general concept of vicarious liability as the Supreme Court formulated it in Grokster. It said one infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it. And I want to focus on that because, yes, the direct financial benefit or interest, depending on how you phrase it, criterion is relevant. But most importantly in this case, the evidence is clear that Giganews did not fail to exercise some right or ability to stop or limit infringement. At every opportunity, it tried to do so in conjunction and cooperation with copyright holders. But this copyright holder is different. Giganews takes down half a billion message IDs but can't get message IDs from this plaintiff. Perfect Ten responded to notices. It warned its customers who received notices that they would not get more than one more opportunity to infringe. First strike notice to the customer says, one more time and you're done. It would suspend customers on the second notice. And when it got bad notices as it did in this case, it asked for better notices. There was no failure on Giganews' part to exercise any right and ability to supervise infringements. It did what it could. But let's come back to the direct financial benefit. Vicarious liability really has drifted a little bit from its original conception in the cases out of the Second Circuit, Shapiro, Bernstein, and Gershwin. The doctrine is rooted in respondeat superior and the Second Circuit in Shapiro and Gershwin said, okay, employer-employee is too narrow a relationship. We don't want to just limit liability to those relationships. So what are the characteristics of an employer-employee relationship that allow us to apply this doctrine beyond the employer-employee relationship? And in Shapiro-Bernstein, it was when a department store didn't have its own employees but had independent contractor concessionaires on the site selling products that went through the department store's finances, went through the department store's cash registers and the department store gave out receipts from itself rather than from the concessionaire. So what were the hallmarks of that type of relationship that were like an employer relationship? The right and ability to supervise the infringements coupled with an obvious  Gershwin applied in the dance hall cases because the defendant and Gershwin actually organized, created, sponsored the concerts and managed the artists. That was sort of the background of taking vicarious liability outside the narrow scope of respondeat superior. This court, once in a Fair Housing Act case, tried to expand vicarious liability in the context of a race discrimination claim. And it wanted to find a supervisor liable for the wrongs of lower level employees doing that. That was Meyer versus Holly. That went up to the Supreme Court. And the Supreme Court reversed the Ninth Circuit saying when a federal statutory tort is the basis of a claim, vicarious liability must remain within its traditional boundaries unless Congress has spoken otherwise and given direction. So we have to be careful how far we spread vicarious liability. In Fono Visa, the ruling was, first of all, Fono Visa, the swap market, swap meet, did nothing to help. That's not the facts here. It would not help curb the infringement. But the Ninth Circuit ruled that there the swap meet owner was in the same kind of financial intertwining relationship with the counterfeit sellers that it could be liable. It was only on a motion to dismiss. It was a pleading stage. It could be liable because of the nature of that relationship. But on vicarious, the point that Mr. actually Mr. Hentoff was saying, no causation is allowed. And that addressed your question, Judge Nelson. This court has repeatedly held that causation is required for a direct financial benefit. It started with Ellison. It required a causal relationship at page 1079. And that was well-grounded. That decision was well-grounded in the Shapiro-Bernstein case out of the Second Circuit because that formulated the test for vicarious liability so that the person who could be held liable was the beneficiary of the infringement, for the beneficiary of the infringement. Then Ellison says, causation, a causal relationship is required. Perfect 10 versus Amazon.com reiterated the causation requirement from Ellison. And it said at 1173, to succeed in imposing vicarious liability, a plaintiff must establish that a defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement. That's at 1173. Range Road Music, in 2012, the case, another vicarious liability case, and plaintiff even cited that case, the decision of this court quoted and endorsed the causation requirement from Amazon.com. So this idea that causation arose somehow with Judge Barat is just not true. It's been in Ninth Circuit jurisprudence in at least four cases. But I'd like to focus also on vicarious on the Fung case because that's an important case that addressed right and ability to control under the DMCA. And it said that right and ability to control means the service provider must exert substantial influence on the activities of its users. And there, Fung organized torrent files, personally assisted users in finding infringing files and the like. That makes sense in terms of the degree of interaction between the parties there. So I think the vicarious liability is dead, Your Honor. I understand why the RIAA is here arguing for it because it really wants to argue why it really doesn't have to prove cases. And copyright law, you have a certificate of registration. Maybe you don't have to prove ownership. They make all sorts of arguments about making available as a violation because they don't want to have to prove certain aspects of like the distribution right. You've got statutory damages so you don't have to prove real harm or damages. I get why they don't want to have to prove causation. And it wasn't some small-time copyright holder. It was the RIAA saying we shouldn't have to prove causation. I think that goes nowhere, Your Honor. I'd like to turn to contributory quickly. The Supreme Court landmarks for contributory liability are Sony and Grokster. And I'd like to point out first, and they're under the sort of, well, the Court of Appeals' recent landmarks are Fung and Lovedarts. And they sort of reflect the two main themes of contributory liability that came out of the Grokster case. In Perfect10 versus Amazon.com, this court cited Judge Ginsburg's concurrence in Grokster to identify that there are really two different prongs. And I'll quote, the court has defined two categories of contributory liability. Liability under our jurisprudence may be predicated on actively encouraging or inducing infringement through specific acts or on distributing a product distributees use to infringe copyrights if the product is not capable of substantial or commercially significant non-infringing uses. That's Amazon.com at 1170, quoting the Grokster in full court at 930, and Judge Ginsburg's concurrence at 942. So under Amazon.com, again, a Perfect10 case, we learn that contribution must be intentional. And it found that under Grokster, wrongful intent could be imputed from actual knowledge. And this court held, we hold that a computer system operator can be held contributory liable if it has actual knowledge, and the court italicized the word actual. Actual knowledge that specific italicized infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works. Well, the -- I take it your answer to that is that there weren't simple measures. Exactly, Your Honor. Giga News did everything it could, and what it could not do was adopt what Judge Collins artfully referred to as the Rube Goldberg method of searching for infringements. One thing we know about Rube Goldberg is he complicated everything to the maximum degree. It was funny then. It's not funny when $7.5 billion seems to be riding on this sort of game that Perfect10 is engaging in. One thing I'd like to point out, that after Sony, following Sony, Love Darts, well, constructive knowledge alone is no longer enough if the product is capable of substantial non-infringing uses. If it is capable of substantial non-infringing uses, as using that unquestionably is, then specific knowledge of actual infringements is required. Counsel, why don't you start wrapping this up? Sure. The last thing I'll just point out is that Fung is very important here on the inducement side of things. Fung says there has to be a high degree of proof of the improper object. That's at page 1033. The improper object of a defendant must be plain and affirmatively communicated through words or actions, and it requires clear expression or other affirmative steps to foster infringement. Your Honor, in this case, Iganu's steps were to try to work with Perfect10, to try to curb the infringements that Perfect10 wanted curbed. It did its best. Please affirm the district court's decision. Thank you. Thank you, Your Honor. So we'll go ahead and put on four minutes. Thank you. But I'm going to hold you to four minutes, okay? Fine. All right. Well, it's clear that Mr. Bridges isn't focusing on the decisions that were made below. There was no discussion in vicarious of the right or ability to control. The entire decision was based on the direct financial benefit rule, and it isn't an issue of causation. The issue is the scope of the direct financial benefit rule. And here, unlike all of the other cases the Ninth Circuit has ruled upon, the district court created a narrow rule that you had to show that subscribers subscribed specifically to access P10 infringements. It's contrary to A&M Records versus Napster, where the court held that a finding of financial benefit was based on the quality and quantity of available music, not on the basis of the music of plaintiffs. Range Road Music, which Mr. Bridges says supports him, that's not correct. There, the court held that defendants were vicariously liable because they derived the financial benefit from the musical performances in the lounge, not from plaintiffs' musical performances. And in Fung, the court, this court also held that direct financial benefit existed because Fung's revenue stream is predicated on the broad availability of infringing materials, not on the infringing materials of plaintiffs. Ellison itself does not support this narrow rule. Ellison states that customer, the plaintiffs must submit evidence that customers either subscribe because of the available infringing material or cancel subscriptions because it was no longer available. But it's clear that Ellison was referring to infringement generally because the next sentence specifically says that Ellison was able to satisfy this requirement by showing the causal relationship between AOL's profits and subscriptions and the infringing activity on its Usenet servers, not the infringing activity relating specifically to Ellison. As Mr. Hendroff pointed out, this Usenet group involved science fiction. It was not only Mr. Ellison. So therefore, Ellison, like all the other cases, supports the direct financial benefit rule as it existed contrary to the district court. Turning to contributory infringement, once again, the issue here was based upon a prima facie claim of knowledge, okay? And we asked the court to look at the videos that we supplied that the district court ignored and the notices that we provided that are discussed in our papers. They're found at 7ER 1593 versus 1603. The notion that those notices did not comply with the specific requirements of the DMCA and could not be processed is simply incorrect. Let me turn to the direct infringement issue. Mr. Bridges makes my point. In quoting Fox, he says that the reason why DISH was not liable was because, and let me get the exact quote here. The copies were made, quote, at the user's command, close quote. Here, we have uncontroverted evidence that the 9,604 P10 images that were copied by GigaNews from other Usenet servers were not made at any user's command. The notion that somehow some other Usenet service provider is a user was never raised below and it was waived, it's nowhere in their briefs. The discussion of VO, never raised below, nowhere in their briefs. They don't address our arguments. Instead, they spend time attacking us about prior cases, about damages that aren't even in the case. You know, when you don't have the facts, you argue the law. When you don't have the law, you argue the facts. When you don't have either, you attack the other side. That's what they've done. And when you're out of time. And that's fine. You wrap it up. Okay. Why, I tried to finish. Thank you. Thank you very much, counsel. The matter has been submitted. I appreciate arguments from all the counsel today. It was very, very good. I much appreciate it.
judges: Pregerson, D.W. Nelson, Owens